UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:26-cv-07236-AB | Date: | September 4, 2026 |
|---|---|---|---|

| Title: | *Bernardo Carachure Hernandez v. Markwayne Mullin* |
|---|---|

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
|---|---|

| Evelyn Chun | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** **[In Chambers] ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS [Dkt. No. 1]**

Petitioner Bernardo Carachure Hernandez ("Petitioner") (A#246-061-183) is an immigration detainee in custody at the Adelanto ICE Processing Center and Detention Facility in Adelanto, California. *See* Writ for Petition of Habeas Corpus ("Petition" or "Pet."), Dkt. No. 1 ¶¶ 1, 3. Petitioner entered the United States approximately ten years ago and is currently in removal proceedings. *See id.* On July 2, 2026, Petitioner filed a Petition for Writ of Habeas Corpus challenging the lawfulness of his detention. *See* Pet. Petitioner challenges his detention on the grounds that he is not subject to detention under 8 U.S.C. § 1225(b)(2), that his arrest and detention without a pre-deprivation hearing violates the Fifth Amendment's Due Process Clause, and that his continued detention violates substantive due process. *See generally id.* Respondents Todd Blanche, Todd Lyons, Markwayne Mullin, Ernesto Santacruz, Fereti Semaia (collectively, "Respondents") filed an Answer, Dkt. No. 9, and Petitioner filed a Reply, Dkt. No. 13. For the reasons discussed below, the Court **GRANTS** the Petition.

## I. BACKGROUND

Petitioner Bernardo Carachure Hernandez (“Petitioner”) entered the United States with his family approximately ten years ago, when he was around 15 years old. Pet. ¶ 19. Since then, he has developed substantial ties to the Santa Barbara and Southern California communities, including relationships with family members, coworkers, and other members of the community. *Id.* ¶ 20. He resided with his parents and completed high school in Santa Barbara, graduating from Santa Barbara High School on June 3, 2020. *Id.* ¶ 21. During high school, he earned several certificates and awards, including a certificate in language and society, a homework-completion certificate, and a Superlative Achievement in the Skills Program. *Id.* He also received positive evaluations from his teachers, including one describing him as “a respectful, responsible and kind individual” who supported his classmates and sought to uplift those around him. *Id.* ¶ 22.

After completing high school, Petitioner worked at several Santa Barbara-area restaurants as a cook and, at several points in his early twenties, held three restaurant jobs simultaneously. *Id.* ¶ 23. His most recent employer and coworkers regarded him as a trusted and respected member of the workplace who helped resolve conflicts among coworkers and supervisors. *Id.* In 2023, Petitioner met his fiancée, Diana, through mutual friends, and the two subsequently developed a relationship that extended to their respective families. *Id.* ¶ 24. After approximately two years of dating, they decided to marry and began planning their wedding before Petitioner was detained by immigration authorities. *Id.* Diana is a United States citizen, and the two are continuing the process of getting married while Petitioner remains in immigration detention. *Id.* Petitioner remains in removal proceedings and, through separate immigration counsel, is preparing applications for asylum and other forms of immigration relief. *Id.* ¶ 27.

On March 9, 2026, Petitioner was arrested for misdemeanor DUI and briefly detained in a local Santa Barbara jail. *Id.* ¶ 25. Santa Barbara authorities released him the following day, March 10, 2026, after which ICE officers approached him outside the jail. *Id.* During the ensuing arrest, Petitioner sustained injuries to his face and arms, lost a tooth, and suffered a wound to his tongue and mouth that required eleven stitches. *Id.* He was hospitalized following the arrest and was later charged with assaulting an ICE agent under 18 U.S.C. §§ 111(a)(1) and (b). *Id.* Petitioner pleaded not guilty to the federal charges and was initially detained at the Metropolitan Detention Center (“MDC”) in Los Angeles pursuant to an order issued by a Magistrate Judge of the Central District of California. *Id.*

On April 15, 2026, District Judge André Birotte Jr. determined that Petitioner was neither a flight risk nor a danger to the community and ordered his release pending trial pursuant to 18 U.S.C. § 3142. *Id.* ¶ 26. The release order directed that he be placed under the supervision of the United States Probation and Pretrial Services and imposed several conditions of release. *Id.*; *United States v. Carachure Hernandez*, No. 26-CR-00182-AB, Dkt. 34 (C.D. Cal. Apr. 15, 2026). Rather than being released pursuant to that order, however, Petitioner was transferred directly to the Adelanto ICE Processing Center and Detention Facility. *Id.* ¶¶ 3, 26. He alleges that he was transferred without any pre-detention process and has remained detained since that time without a meaningful opportunity to challenge his immigration detention. *Id.* ¶ 3.

Petitioner further alleges that he continues to experience physical pain and distress while detained. *Id.* ¶ 28. Following the March 10, 2026 arrest, he was hospitalized for injuries to his mouth, lip, eye, and arms, including the wound requiring eleven stitches and the loss of a tooth. *Id.* His injured eye remained closed for several days and continues to be sensitive. *Id.* Although he received medication at the hospital, he alleges that he was not provided medication after his subsequent transfers to MDC or the Adelanto facility. *Id.* He further alleges that, when he requested medication for pain at Adelanto, ICE staff did not provide it. *Id.*

## II. LEGAL STANDARD

Relief in the form of a writ of habeas corpus may be granted to a person in custody under the authority of the United States if the petitioner can show that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001) (federal courts retain jurisdiction to consider habeas relief under § 2241 for noncitizens subject to detention following an order of removal).

## III. DISCUSSION

The Court first considers whether Petitioner has exhausted all of his remedies and whether Petitioner's detention is authorized under 8 U.S.C. § 1225(b)(2). The Court then considers whether Petitioner's detention violates procedural or substantive due process and, if so, the appropriate remedy. For the reasons indicated below, the Court **GRANTS** the Petition.

### A. Whether Petitioner Has Exhausted His Remedies

As an initial matter, Petitioner's failure to exhaust administrative remedies is waivable. Respondents argue that the Court should deny the Petition because Petitioner has not first sought a bond redetermination hearing before an immigration judge or appealed any resulting custody determination to the Board of Immigration Appeals. Answer at 4. "Federal [incarcerated persons] are required to exhaust their federal administrative remedies prior to bringing a petition for a writ of habeas corpus in federal court." *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986) (per curiam); *see also Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). Although exhaustion of administrative remedies is not a jurisdictional prerequisite to a habeas petition, courts may impose an exhaustion requirement as a prudential matter. *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), abrogated on other grounds by *Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). The Ninth Circuit has identified three considerations relevant to whether prudential exhaustion is appropriate: "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). Even where those factors favor exhaustion, however, a court may waive the requirement where administrative remedies are inadequate or ineffective, pursuing them would be futile, irreparable injury would result, or the administrative proceedings would be void. *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (citation and quotation marks omitted).

Here, the Court declines to require exhaustion because the administrative remedies identified by Respondents would not provide Petitioner an adequate or effective means of obtaining the relief he seeks. Petitioner does not merely challenge the amount or conditions of his bond; he challenges the statutory authority for his detention and contends that his detention without a pre-

deprivation hearing violates the Constitution. *See generally* Pet. An immigration judge and the Board of Immigration Appeals ("BIA") lack authority to adjudicate Petitioner's constitutional claims. *See Wang v. Reno*, 81 F.3d 808, 814 n. (9th Cir. 1996) (per curiam); *see also Montoya Echeverria v. Barr*, No. 20-CV-02917-JSC, 2020 WL 2759731, at *6 (N.D. Cal. May 27, 2020) (quoting *Liu v. Waters*, 55 F.3d 421, 426 (9th Cir. 1995)) (stating that the BIA "has no jurisdiction to decide questions of the constitutionality of the immigration laws," and therefore "cannot consider the constitutional issues raised here"). Thus, agency review cannot provide a determination on the central constitutional questions presented by the Petition. Nor does the Court find that agency expertise is necessary to resolve those questions, which concern the scope of statutory detention authority and the procedural protections required by the Fifth Amendment.

Moreover, Respondents' proposed administrative remedy is not clearly available to Petitioner in the first place. Respondents contend that Petitioner could seek a bond redetermination hearing before an immigration judge under 8 C.F.R. § 236.1(d)(1). Answer at 4. But Petitioner is currently charged as removable under 8 U.S.C. § 1182(a)(6)(A)(i), and he contends that, under *Matter of Yajure Hurtado,* 29 I&N Dec. at 220-21, 225-27 (BIA 2025), 29 I&N Dec. 216 (BIA 2025), the immigration judge would lack jurisdiction to conduct a custody redetermination for a noncitizen subject to detention under § 1225(b)(2)(A). *See* Answer at 6. The availability of the very administrative remedy Respondents contend Petitioner must exhaust is therefore uncertain, particularly where Petitioner's principal statutory argument is that § 1225(b)(2)(A) does not authorize his detention at all. Requiring Petitioner to pursue a procedure that may be unavailable or incapable of addressing his claims would serve little purpose other than delaying judicial review.

Finally, requiring exhaustion here would risk prolonging an allegedly unconstitutional deprivation of liberty. Petitioner has been detained since March 2026, despite this Court's determination on April 15, 2026, that he was neither a flight risk nor a danger to the community and could be released subject to conditions. Pet. ¶ 26. Where, as here, the challenged detention itself constitutes the alleged constitutional injury, requiring Petitioner to pursue potentially unavailable administrative remedies before obtaining judicial review would prolong that injury without providing an adequate mechanism for resolving the constitutional claims presented. *See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (recognizing that prudential exhaustion may be waived where administrative remedies are inadequate or inefficacious, pursuit would be futile, or irreparable injury would result). Accordingly, the Court finds that exhaustion should be waived and proceeds to the merits of Petitioner's claims.

**B. Whether Petitioner is Subject to Detention Under 8 U.S.C. § 1225(b)(2)**

The Immigration and Nationality Act ("INA") prescribes three basic forms of detention for most noncitizens. 8 U.S.C. § 1226 "authorizes the Government to detain certain [noncitizens] already in the country pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Specifically, the provision provides that "on a warrant issued by the Attorney General, [a noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a). The Attorney General may continue to detain the arrested noncitizen, release him on bond, or release him on conditional parole. *Id.* Individuals detained under § 1226(a) are entitled to receive bond hearings at the outset of detention. 8 C.F.R. § 236.1(d)(1); *see also Jennings*, 583 U.S. at 306. Section 1226(a) and its implementing regulations further "provide extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022) ("Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including ... an initial bond hearing before a neutral decisionmaker.").

Section 1226(c) then "carves out a statutory category of [noncitizens] who may not be released under § 1226(a)." *Jennings*, 583 U.S. at 289. The subsection specifically mandates detention for a noncitizen "who falls into one of several enumerated categories involving criminal offenses and terrorist activities." *Id.* It also includes noncitizens who are "inadmissible" as well as those who are "deportable." *See* 8 U.S.C. § 1226(c)(1)(A), (D), (E). As one district court recently observed, "[a] plain reading of this exception implies that the default discretionary bond procedures in Section 1226(a) apply to a noncitizen who ... is present without being admitted or paroled but has not been implicated in any crimes as set forth in Section 1226(c)." *Rodriguez*, 779 F. Supp. 3d at 1256.

Conversely, Section 1225 "applies primarily to [noncitizens] seeking entry into the United States." *Jennings*, 583 U.S. at 297. Under 8 U.S.C. § 1225(a), a noncitizen who "arrives in the United States" or "is present" in the United States but "has not been admitted" is treated as "an applicant for admission." 8 U.S.C. § 1225(a)(1). Applicants for admission must "be inspected by immigration officers" to ensure that they can be admitted into the country consistent with immigration

law. *Id.* § 1225(a)(3). "That process of decision generally begins at the Nation's borders and ports of entry, where the Government must determine whether [a noncitizen] seeking to enter the country is admissible." *Jennings*, 583 U.S. at 287. "[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Id.* Section 1225(b)(1) "applies to [noncitizens] initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," who are "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Id.* (quoting 8 U.S.C. § 1225(b)(1)(A)(i)). Section 1225(b)(2), the "broader" of the two, "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)[.]" *Id.* Section 1225(b)(2) mandates detention "for a [removal] proceeding" if "the examining immigration officer determines that [a noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted" into the country. 8 U.S.C. § 1225(b)(2)(A).

Here, Petitioner was not "seeking admission" into the United States at the time of his arrest and has no final order of removal. Pet. ¶ 33. The Court therefore agrees with Petitioner that 8 U.S.C. § 1225(b)(2) does not apply to him, and the plain text of § 1226(a) applies to him instead. Petitioner entered the United States approximately ten years ago, when he was approximately fifteen years old, and has since lived, attended school, worked, and established substantial community and family ties in the United States. *Id.* ¶¶ 19–24. Nothing in the Petition indicates that Petitioner was attempting to enter or reenter the United States when ICE arrested him on March 10, 2026; rather, ICE approached him outside a Santa Barbara jail after he had been released from local custody. *Id.* ¶ 25. Thus, the circumstances of Petitioner's arrest bear none of the hallmarks of the inspection and admission process contemplated by § 1225, which "generally begins at the Nation's borders and ports of entry." *Jennings*, 583 U.S. at 287. And although § 1225(b)(2) operates as a broad catchall for applicants for admission who are not covered by § 1225(b)(1), it remains a provision governing "applicants for admission," not a general authorization for immigration detention of a noncitizen who has long resided in the United States and is not seeking admission. *See* 8 U.S.C. §§ 1225(a)(1), (b)(2)(A); *Jennings*, 583 U.S. at 287, 297. Because Petitioner was not seeking admission when ICE took him into custody, the Government cannot rely on § 1225(b)(2)(A) as statutory authority for his detention.

### C. Whether Petitioner's Arrest and Detention Without a Pre-

**Deprivation Hearing is Unconstitutional**

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Ed.*, 149 F.3d 971, 982 (9th Cir.1998). The first step is to determine whether the individual possesses a liberty or property interest that triggers due process protections. *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). If such a constitutionally protected interest exists, the second step applies a three-step balancing test described in *Mathews v. Eldridge* to assess what procedural safeguards are required. 424 U.S. 319, 334–35 (1976). Only after establishing a constitutionally protected interest does the analysis proceed to the second step.

Under *Mathews*, the "identification of the specific dictates of due process generally requires consideration of three distinct factors." *Id.* "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

*i. <u>Petitioner Has a Protected Liberty Interest</u>*

As an initial matter, the Court finds that Petitioner possesses a significant liberty interest that triggers due process protections. All persons in the United States, regardless of their citizenship status, means or legality of entry, or length of stay, are entitled to the protections of the Due Process Clause. U.S. Const. Amend. 5; *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent").

The Supreme Court has emphasized that "freedom from physical restraint 'has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.' " *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)); *see also Youngberg v. Romeo*, 457 U.S. 307, 316 (1982). The Ninth Circuit and district courts within the circuit have consistently applied this fundamental principle, recognizing that "freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty (the Due Process Clause)

protects." *Duong v. Kaiser*, 800 F. Supp. 3d 1030, 1037 (N.D. Cal. 2025) (citing *Zadvydas*, 533 U.S. at 690). Civil detention, including that of a non-citizen, violates due process in the absence of a "special justification" sufficient to outweigh one's " 'constitutionally protected interest in avoiding physical restraint.' " *Zadvydas*, 533 U.S. at 690.

*ii. Detention Without a Pre-Detention Hearing Violated Due Process Under the* Mathews *Test*

Because Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before Respondents can deprive him of that interest. *See Mathews*, 424 U.S. at 334–35. The Court considers the three-factor balancing test set forth in *Mathews* to determine whether Respondents' procedures satisfy the Due Process Clause: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

*First*, Petitioner's "private interest" in remaining out of custody is substantial. Petitioner's interest derives from the constitutional right to not be deprived of liberty without due process. It is beyond debate that a person has the utmost interest in remaining out of custody. *See Zadvvdas* 533 U.S. at 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects."). That interest is particularly substantial here because Petitioner was not merely subject to a brief administrative restraint. Rather, after this Court determined that Petitioner was neither a flight risk nor a danger to the community and ordered him released pursuant to 18 U.S.C. § 3142, Petitioner was instead transferred directly into immigration custody, where he has remained detained. Pet. ¶¶ 25–26. The resulting deprivation is therefore an ongoing loss of physical liberty that has prevented Petitioner from returning to his family and community and continuing his life outside detention. *See id*. ¶¶ 19–28. Moreover, Petitioner alleges that he continues to experience physical pain while detained, including pain associated with injuries sustained during his arrest, and that detention officials did not provide him medication when he requested it. *Id.* ¶ 28. The first *Mathews* factor therefore weighs strongly in Petitioner's favor.

*Second,* the procedures Respondents used pose a high risk of erroneous or

unlawful deprivation, and other, more effective procedural safeguards were available. Here, Respondents allegedly transferred Petitioner directly from federal criminal custody into immigration detention without providing him any pre-detention hearing or individualized assessment of whether continued detention was warranted. *Id.* ¶¶ 3–4. The risk of error is particularly apparent because, only days before the challenged immigration detention, this Court considered Petitioner's circumstances and expressly determined that he was neither a flight risk nor a danger to the community, ordering his release under conditions supervised by United States Probation and Pretrial Services. *Id.* ¶ 26. Although that determination arose in the context of Petitioner's federal criminal case, it provides a recent, individualized assessment by a neutral judicial officer of the two principal interests ordinarily advanced to justify physical detention: preventing flight and protecting the community. *See Hernandez*, 872 F.3d at 994.

Respondents' decision to assume custody without affording Petitioner any opportunity to present evidence concerning his circumstances, including the recent federal release determination, eliminated the procedural mechanism through which an erroneous detention could be identified before the deprivation occurred. And the availability of a neutral custody hearing would have provided a meaningful safeguard at comparatively little additional cost, particularly because such hearings are already routine in immigration proceedings. *See Singh v. Andrews*, No. 1:25-CV-00801-KES-SKO (HC), 2025 WL 1918679, at 8 (E.D. Cal. July 11, 2025). The second *Mathews* factor therefore also weighs strongly in Petitioner's favor.

*Third*, Respondents have no legitimate interest in re-detaining Petitioner without first providing notice and a hearing. *See Hernandez*, 872 F.3d at 994 ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions.") "Nor can [Respondents] suggest that the cost of providing such protections would be fiscally or administratively onerous." *Pinchi*, 792 F. Supp. 3d at 1036 (citations omitted). "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Singh*, 2025 WL 1918679, at *8. Respondents undoubtedly have an interest in ensuring that noncitizens appear for removal proceedings and do not pose a danger to the community. But those interests do not justify dispensing with individualized process altogether, particularly where this Court had recently determined that Petitioner was neither a flight risk nor a danger to the community and had imposed conditions designed to address those concerns. Pet. ¶ 26. Nor would requiring a pre-detention custody hearing meaningfully impair Respondents' ability to pursue its immigration

objectives; Respondents would remain free to present evidence supporting detention and to seek appropriate conditions before a neutral decisionmaker. *See Hernandez*, 872 F.3d at 994; *Singh*, 2025 WL 1918679, at *8. And as courts have recognized, providing a custody hearing imposes only minimal administrative and fiscal burdens because such hearings are a routine component of the immigration detention system. *See Pinchi*, 792 F. Supp. 3d at 1036; *Singh*, 2025 WL 1918679, at *8. The third *Mathews* factor thus favors Petitioner as well.

All of the *Mathews* factors strongly favor Petitioner's claim that Respondents violated his Fifth Amendment right to due process by transferring him into immigration custody without first providing a meaningful opportunity for a neutral decisionmaker to assess whether detention was warranted. Petitioner has a significant liberty interest in remaining free from physical restraint; the absence of any pre-detention hearing created a substantial risk of erroneous deprivation, particularly given the recent federal judicial determination that Petitioner was neither a flight risk nor a danger to the community; and requiring a routine custody hearing would impose only minimal burdens on the Government. Pet. ¶¶ 3–5, 26. Accordingly, Petitioner has established that his detention without a pre-detention hearing violated procedural due process.

**D. Whether Petitioner's Detention Violates Substantive Due Process**

"Substantive due process protects individuals from state action that interferes with fundamental rights." *Regino v. Staley*, 133 F.4th 951, 959 (9th Cir. 2025) (internal quotation omitted) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process."). Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302 (1993). By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation omitted). To assess whether there has been a violation of a fundamental right, courts begin with "a careful description of the asserted fundamental liberty interest." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." *Khachatryan v. Blinken*, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation omitted).

Here, Petitioner's asserted liberty interest is the right to remain free from physical restraint absent a constitutionally sufficient justification for detention. That interest is fundamental: the Supreme Court has recognized that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. Petitioner's detention therefore implicates a core liberty interest protected by substantive due process. The Government nevertheless may impose civil immigration detention where detention serves a legitimate governmental purpose, such as preventing flight or protecting the community. *See id.*; *Hernandez*, 872 F.3d at 994. But where those interests are not present, the Government lacks a legitimate basis for imposing the severe restraint of physical detention.

That is the circumstance alleged here. Petitioner was detained after this Court expressly determined that he was neither a flight risk nor a danger to the community and ordered his release subject to conditions and supervision by United States Probation and Pretrial Services. Pet. ¶ 26. The Petition alleges no intervening facts demonstrating that Petitioner subsequently became a flight risk or danger to the community before Respondents assumed custody of him. *Id*. ¶¶ 25–28. To the contrary, Respondents transferred Petitioner directly into immigration detention rather than releasing him pursuant to this Court's order, without first providing a process through which his continued detention could be justified. *Id.* ¶¶ 3–5, 26. On these allegations, Petitioner's continued physical restraint is not reasonably related to a legitimate governmental interest sufficient to justify the deprivation of his fundamental liberty interest. *See Hernandez*, 872 F.3d at 994 ("the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions").

Accordingly, the Court concludes that Petitioner has adequately demonstrated that his continued detention, in the circumstances alleged here, violates substantive due process. Respondents may pursue Petitioner's removal proceedings and may seek appropriate conditions to ensure his appearance and protect the community, but it may not impose continued physical detention without a constitutionally sufficient justification for doing so. Because Petitioner's detention is unsupported by such a justification on the record before the Court, habeas relief is warranted.

**E. Appropriate Remedy**

The Supreme Court has repeatedly emphasized that "[h]abeas is at its core a remedy for unlawful executive detention," and "[t]he typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody.")). The Ninth Circuit has similarly held that "the purpose of habeas remedies is to 'put the [petitioner] back in the position he would have been in if the [constitutional] violation never occurred.' " *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (quoting *Nunes v. Mueller*, 350 F.3d 1045, 1057 (9th Cir. 2003)). Thus, "[a]s has been found in countless similar cases in this Circuit, the appropriate remedy in such cases is to order Petitioner placed in the position he would have been absent the due process violation—that is, he should be released from custody on the conditions that were initially imposed." *Iurii Mazurov v. Desert Annex Det. Facility*, No. 5:26-CV-02236-BFM, 2026 WL 1365164, at *4 (C.D. Cal. May 8, 2026) (citing cases).

Notably, various courts have ordered release even where a belated bond hearing has taken place. *See Charaf v. Rios*, 2026 WL 1270754, at *6 (C.D. Cal. May 5, 2026); *see also Mumaev v. Semaia*, No. 5:25-CV-03409-FLA-MAR, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026); *Medrano-Rocha v. Santacruz*, No. CV-26-00404-KK-AGRX, 817 F. Supp. 3d 871, 2026 WL 411355, at *6 (C.D. Cal. Jan. 23, 2026) ("Providing Petitioner with a post-detention hearing or other procedural remedy will not redress the constitutional violation Petitioner has suffered in being re-detained without a predeprivation hearing required by due process."); *Saballos Rosales v. Noem*, No. 5:26-CV-00112-JWH-MBK, 2026 WL 761371, at *3 (C.D. Cal. Mar. 16, 2026) ("[T]he post-detention process that Rosales did receive, and will receive, 'is no substitute for the pre-detention process she was owed.'" (quoting *Hasratyan v. Bondi*, No. 5:26-CV-00210-MCS-ADS, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026))); *Kumar v. Rios*, No. 5:26-CV-01988-MAR, 2026 WL 1764923, at *7 (C.D. Cal. June 12, 2026). Accordingly, this Court will order Petitioner released from immigration custody and restored to the position he would have occupied absent the due process violation—namely, release subject to the conditions previously imposed in his criminal case.

To be sure, a post-detention hearing would not cure the violation because Petitioner was constitutionally entitled to process before the challenged deprivation occurred. *See See, e.g., Villegas Molina v. Mullin*, No. 2:26-CV-04091-MWC-SP, 2026 WL 1182194, at *3 (C.D. Cal. Apr. 23, 2026) ("The Court must heed the

language in *Mathews* that '[a] claim to a predeprivation hearing as a matter of constitutional right rests on the proposition that full relief cannot be obtained at a postdeprivation hearing.' " (quoting *Mathews*, 424 U.S. at 331)). Nor would merely directing Respondents to provide a hearing now place Petitioner in the position he would have occupied absent the violation, because Petitioner would have remained subject to this Court's April 15, 2026 release order had Respondents provided the process required before assuming custody. *See Lujan*, 734 F.3d at 935 ("the purpose of habeas remedies is to put the petitioner back in the position he would have been in if the constitutional violation never occurred.") (internal quotations omitted) (cleaned up). The appropriate remedy is therefore immediate release from immigration custody, subject to the conditions of release previously imposed in Petitioner's federal criminal case. *See Preise*r, 411 U.S. at 484, ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody.")).

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner's detention is not authorized under 8 U.S.C. § 1225(b)(2) and that his continued detention without a pre-detention hearing violates the Fifth Amendment's Due Process Clause. The Court therefore **GRANTS** the Petition and orders the following relief:

1. Respondents must IMMEDIATELY RELEASE Petitioner Bernardo Carachure Hernandez (A#246-061-183) from immigration custody.

2. Respondents are PERMANENTLY ENJOINED from re-detaining Petitioner based on the circumstances presented in this case.

3. Respondents SHALL return to Petitioner any personal property in their possession that was taken or retained in connection with his detention, including any identification documents and other personal possessions.

4. The Court DENIES as moot Petitioner's request for an evidentiary hearing to the extent it seeks an evidentiary hearing to resolve factual disputes concerning the lawfulness of his present detention.

5. Respondents SHALL file a Notice of Release by September 8, 2026.

**IT IS SO ORDERED**.